UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT SKALSKI,

        Plaintiff,

        v.

CITY OF CHICAGO,

        Defendant.

Case No. 23-cv-15370

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert Skalski, brings this action against Defendant, the City of Chicago, alleging that Defendant violated his civil rights under Title VII, 42 U.S.C. § 2000e, *et seq.,* by initially denying his request for a religious exemption and taking adverse employment action against him. [1]. Defendant moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, this Court denies Defendant's motion [18].

### I.    Factual Background[1]

Plaintiff, a resident of Chicago, worked for the Chicago Fire Department. [1] ¶¶ 3, 11. As a practicing Catholic-Christian, Plaintiff sincerely believes his religion dictates that God gifts human life, making it sacred. *Id.* ¶ 12. Plaintiff also believes abortion contradicts his faith's teachings. *See id.* Consequently, Plaintiff sincerely

---

[1] This Court takes these facts from Plaintiff's Complaint, [1], and accepts them as true for purposes of resolving the motion to dismiss. *See Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

believes he may not receive vaccinations developed or tested on cell lines taken from aborted fetuses. *Id.* ¶ 14.

In August 2021, Defendant, the City of Chicago, instituted a now-defunct policy that required all city employees to receive a COVID-19 vaccination. *Id.* ¶¶ 12–13. As a city firefighter, Plaintiff fell within the purview of the policy. COVID-19 researchers developed the vaccines by testing on cells taken from aborted fetal cell lines. *Id.* Therefore, Plaintiff did not believe his religion allowed him to be vaccinated. Defendant allowed those with objections to the vaccine to file exemption requests. *See id.* ¶ 15. Accordingly, on October 13 and 14, 2021, Plaintiff filed requests for a religious accommodation. *Id.* ¶ 16.

On November 2, 2021, Defendant contacted Plaintiff regarding his exemption application and requested he provide more information, including the signature of a religious leader. *Id.* ¶ 17; [19-3]. Additionally, Defendant required Plaintiff to fill out a "follow-up form," in which Plaintiff agreed to: (1) refrain from using certain medications; and (2) abide by requirements of a vaccine accommodation which included periodic testing for COVID-19, social distancing, and masking. [1] ¶ 31; *see* [19] at 6 n.4, [19-2, 3]. According to the form, Plaintiff risked disciplinary action, up to termination, if he provided false information in support of his request for an exemption, or refused to engage in the interactive process regarding the exemption. *Id.* Plaintiff attempted to inquire whether he needed to present any additional information to receive his exemption, but he received no response during the process. *Id.* ¶¶ 18, 21, 22. On November 24, 2021, Defendant denied Plaintiff's religious

exemption request, stating that he failed to provide required information. *Id.* ¶ 18. In correspondence with Plaintiff, Defendant never described the missing information. *Id.* ¶ 22. Likewise, Defendant did not contact Plaintiff after the denial and never provided an explanation of the denial. *See id.* ¶¶ 23, 24.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on January 4, 2022. *Id.* ¶ 19. On February 18, 2022, Defendant placed Plaintiff on "No Pay" status. [24] at 5.[2] That same day, Plaintiff signed the "follow-up form." *Id.* Days later, on February 22, 2022, Defendant granted Plaintiff's requested exemption. [1] ¶ 20. Defendant then allowed Plaintiff to return to work the following day on February 23, 2022. [24] at 5.

On July 28, 2023, the EEOC issued a right to sue letter to Plaintiff. [1-3] at 1. Plaintiff filed a complaint in the Northern District of Illinois on October 26, 2023, claiming he suffered emotional distress and lost wages. [1] ¶ 26. Plaintiff claims to have suffered emotional distress, *id.* ¶ 26, and lost wages, [24] at 5. Plaintiff also requests prospective relief. Defendant moves to dismiss all claims for failure to state a claim under Rule 12(b)(6). [18].

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed.

---

[2] The Court may consider facts presented in responsive briefs, so long as they remain consistent with the facts alleged in the complaint. *Smith v. Boyle*, 144 F.3d 1060, 1064 (7th Cir. 1998); *Kim v. Ritter*, 493 Fed.App'x. 787, 789 (7th Cir. 2012); *Veazey v. Communc'n & Cable of Chicago, Inc.*, 194 F.3d 850, 854 (7th Cir. 1999). Plaintiff's placement on no pay status further contextualizes his own professional consequences from his vaccine exemption request.

R. Civ. P. 8(a)(2), and that the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This purposefully liberal pleading regime allows the focus to remain upon the claim rather than technicalities. *Volodarskiy v. Delta Air Lines, Inc.*, 987 F.Supp.2d 784, 787 (N.D. Ill. 2013) (citing *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)).

A complaint must contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Id.* at 678. Though, at this early stage, the question remains whether what the plaintiff alleged *could* have happened, not whether it did. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); *see also Indep. Tr. Corp. v. Steward Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). The civil process allows litigants the benefit of discovery before holding them to their proof. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pled factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). A court does not, however, accept a complaint's legal conclusions as true. *Brooks*, 578 F.3d at 581.

### III.    Analysis

#### A. Standing and Mootness

As a threshold matter, Defendant contends Plaintiff's claims are moot, arguing that Plaintiff suffered no actionable injury, faces no future threat of injury, and was granted a religious accommodation.  [19] at 10.  Article III of the Constitution limits the "federal judicial power to certain 'cases' and 'controversies.'"  *Silha v. ACT, Inc.*, 807 F.3d 169, 172–73 (7th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559−60 (1992)).  Typically, federal courts lack the ability to adjudicate moot cases, and if a plaintiff does not have standing to bring suit at every given point throughout litigation, the case has become moot.  *Milwaukee Police Ass'n v. Board of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 929 (7th Cir. 2013).  Standing requires a plaintiff to show he has suffered an "injury in fact" that remains fairly traceable to the Defendant's misconduct and redressable by the courts.  *Lujan*, 504 U.S. at 560−61.

Here, Plaintiff alleged he was suspended without pay due to his exemption request.  "Concrete financial injuries, namely deprivation of wages," are "prototypical of injuries for the purposes of Article III standing."  *Milwaukee Police Ass'n v.* Flynn, 863 F.3d 636, 639 (7th Cir. 2017). Additionally, because "the City has not affirmatively stated that" the follow-up form is "unenforceable, the threat that violating it (i.e., by taking one of the restricted medications) could impact" Plaintiff's "employment status also ensures the suit remains ripe for adjudication." *Baumgartner v. City of Chicago*, 759 F.Supp.3d 868, 874–75 (N.D. Ill. 2024).

5

Accordingly, Plaintiff's claims are not moot, and Plaintiff maintains Article III standing.

### B. Illinois Tort Immunity Act

Defendant argues the Illinois Tort Immunity Act ("ITIA") bars Plaintiff's claims. The ITIA provides protection to local governments for liability arising out of the adoption of a law or enactment, discretionary policy decisions, and policy decisions about actions to promote the public health of the community. *Baumgartner*, 759 F.Supp.3d at 880; *see also* 745 ILCS 10/2–103, 10/2–201, 10/2–109, 10/6–104(a). But the ITIA "does not extend to violations based on federal law." *Id.* (citing *Anderson v. Vill. Of Forest Park*, 606 N.E.2d 205 (1992) (holding that even if the ITIA "technically covers Section 1983 claims, a state immunity defense cannot control a federal statute."). Here, Plaintiff brings a claim based upon an alleged violation of Title VII. Accordingly, "the ITIA cannot bar Plaintiff's Title VII" claim. *Baumgartner*, 759 F.Supp.3d at 880.

### C. Title VII

The Seventh Circuit has made it "clear that the pleading standard under Title VII is a low bar." *Id.* at 875 (citing *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007)). For a religious discrimination claim under Title VII to survive a motion to dismiss, the plaintiff must show: "(1) that a bona fide religious observance or practice conflicts with an employment requirement; (2) that the plaintiff called the religious observance or practice to her employer's attention; and

(3) that the religious observance or practice was the basis for an adverse employment decision." *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997).

Defendant first argues Plaintiff cannot meet the second element because, Defendant claims, Plaintiff did not engage in Defendant's interactive accommodation process to determine "the religious nature or the sincerity" of Plaintiff's beliefs. [19] at 5. Specifically, Defendant argues that Plaintiff's alleged lack of engagement with Defendant's process for interrogating Plaintiff's "purported beliefs" or the supposed "inconsistency between Plaintiff's belief and the orthodox beliefs" of the Catholic Church waives Plaintiff's claim he communicated his beliefs to Defendant. [29] at 3. Not so,[3] and, despite Defendant's waiver theory, Plaintiff has more than met the "low" Title VII pleading standard at this stage.

---

[3] While employers may make some inquiry into the sincerity of their employees' religious beliefs, they possess no right to determine the orthodox beliefs in a set religion and then enforce that assessment upon their employees. *See Dr. A v. Hochul*, 142 S.Ct. 552, 557–58 (2021) (Mem) (Gorsuch, J., dissenting) (quoting *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 642 (1943)). All members of a particular religious sect, even religious leaders, do not always share the same beliefs. *Id.* Indeed, some religious traditions do not have leaders at all. Nevertheless, as alleged, the City unlawfully requested, among other things, that Plaintiff obtain a signature from a religious leader condoning his request. While a letter from a religious leader may help an employer determine an employee's sincerity, it cannot constitute a requirement an employee must meet. *See* EEOC Guidance Section 12: Religious Discrimination, EEOC-CVG-2021-3 (2021). An employee's sincere religious beliefs need not completely align with a particular authority figure, even if that person holds great stature, such as the Pope. *See id.* at 556, 558. In America, religious observers enjoy the freedom to differ and to differ on matters of importance. *See also id.* at 559. People make intimately personal decisions regarding their religious observation, and this personal process is protected by federal law. *Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707 (1981). Inartful articulation or seeming logical inconsistencies make a person's beliefs no less sincere. Aside from truly bizarre requests, the judicial function does not inquire about the sincerity of religious beliefs or try to perceive the commands of someone's faith. *Id.*; *Bube v. Aspirus Hospital, Inc.*, 108 F.4th 1017, 1020 (7th Cir. 2024) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014) (finding federal courts inapt to determine the reasonability of certain religious beliefs); *see also Lucky v. Landmark Medical of Michigan, P.C.*, 103 F.4th 1241, 1243–44 (6th Cir. 2024) ("'It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.' And the Supreme Court has warned, '[r]epeatedly and in many different contexts,' that 'courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim.' (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989); *and then Employment Div. v. Smith*, 494 U.S. 872, 887 (1990)).

For example, in *Baumgartner*, the plaintiff, a City of Chicago employee, submitted a religious exemption request to the COVID-19 vaccination requirement based upon his objection to receiving a vaccine developed using abortion-derived cell lines. 759 F.Supp.3d at 873. The City of Chicago required the plaintiff to sign a form requiring plaintiff to refrain from taking certain medications. *Id.* There, the court held that the plaintiff adequately pled the first and second elements of a Title VII discrimination claim. *Id.* at 876. "By submitting a religious exemption request to the City, Baumgartner communicated (element one) to the City that getting the COVID-19 vaccine"—which the City required of the employee—was a conflict "with his religious beliefs" (element two). *Id.* Similarly, in *Morris v. City of Chicago*, a Catholic plaintiff made the same religious exemption request to the COVID-19 vaccination requirement and faced the same "follow-up" form. No. 24 CV 1431, 2025 WL 2410370, at *1–2 (N.D. Ill. Aug. 20, 2025). There, the court also held the plaintiff adequately pled the first two elements by: (1) explaining that abortion is at odds with his Catholic religious beliefs; and (2) completing a religious exemption request which calls his religious objection to the City's attention. *Id.* at *5.

Here, Plaintiff has accomplished the same, by explaining that abortion is at odds with his Catholic beliefs, that he cannot take vaccines developed using abortion-derived cell lines, and that he submitted a religious exemption request to the City based upon his religious beliefs. Thus, Plaintiff has met the first two elements of a Title VII claim.

8

Finally, Defendant argues Plaintiff fails to make a Title VII claim because "no adverse employment action was taken against him as a result of his exemption request." [19] at 8. Again, not so.

An adverse employment action is "a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Plaintiff's complaint meets this standard here, because it not only alleges Plaintiff being placed in no pay status, it also sets forth the unlawful aspects of Defendant's follow-up form.

In both *Baumgartner* and *Morris*, the courts found that the City of Chicago's follow-up form and its various requirements, including that the plaintiffs "abstain from using at least 28 commonly used medications including Tylenol, Pepto Bismol, Ibuprofen, and Benadryl" constituted an adverse employment action. *Baumgartner*, 759 F.Supp.3d at 876; *Morris*, 2025 WL 2410370, at *5. Among other things, Defendant effectively forced Plaintiff to "choose between abstaining from the use of these medications" and "maintaining status as an observant Catholic to remain in good standing as employee and not be deemed a religious fraud." *Baumgartner*, 759 F.Supp.3d at 876. Thus, Defendant changed the terms of Plaintiff's employment when he requested a religious exemption.

Accordingly, Plaintiff sufficiently pled an "adverse employment action," satisfying the third element of a Title VII claim.

9

## IV.     Conclusion

For the reasons explained above, the Court denies Defendant's Motion to Dismiss [18], and the previously granted 21-day stay [38] is now lifted. Defendant shall answer the Complaint by 4/17/2026, and Plaintiff's case will proceed to discovery, at which point the parties should develop a full factual record. *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 607 (7th Cir. 2022) (Religious objection to vaccination policy rejected on appeal because parties failed to make a factual record: "Once again, if these assertions have merit, there is no record evidence to support them."). Additionally, the parties shall file a joint status report by 4/27/2026 proposing a reasonable fact discovery deadline, indicating whether they will require expert discovery, and indicating whether they are interested in a settlement conference with the Court. This Court will set additional case management deadlines via a future order.

Dated: March 27, 2026                                   Entered:

John Robert Blakey
United States District Judge

10